UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                        Chapter 7

Deshawn Felecia Williams,                     Case No. 15-58635

    Debtor.                              Hon. Phillip J. Shefferly
_____/

### OPINION AND ORDER DENYING DEBTOR'S MOTION AGAINST THE STATE OF MICHIGAN FOR VIOLATION OF DISCHARGE INJUNCTION

### Background

On December 29, 2015, the Debtor filed this Chapter 7 case pro se. The Debtor received her discharge on April 5, 2016, and the case was closed on April 22, 2016.

On July 13, 2020, the Debtor filed a motion requesting the Court to reopen her case to allow her to pursue an action against the State of Michigan Department of Treasury ("Treasury") for violation of the discharge injunction by its collection of a pre-petition debt owed to the Department of Health and Human Services ("HHS"). On July 14, 2020, the Court reopened the case and set August 17, 2020 as the deadline for the Debtor to take action for any violation of the discharge injunction.

On July 23, 2020, the Debtor filed a pro se Motion for Violation of Discharge Injunction ("Motion") (ECF No. 45). On August 6, 2020, HHS filed an objection ("Objection") (ECF No. 46).

The Court heard the Motion on August 28, 2020. On the day of the hearing, the Debtor filed a reply (ECF No. 50) to the Objection. Following the hearing, with the Court's permission, the Debtor filed a supplemental reply (ECF No. 53) and HHS filed a supplemental objection (ECF No. 57). The Motion, the Objection, and the other papers filed by the Debtor and HHS are accompanied by supporting exhibits.

The Debtor alleges that HHS, through Treasury, has continued to collect a pre-petition debt for restitution of overissued benefits under the Food Assistance Program ("FAP") and the Family Independence Program ("FIP"). Specifically, the Debtor alleges that HHS, through Treasury, seized the Debtor's 2019 state income tax refund and that HHS continues to recoup $72.00 each month out of the FAP benefits that the Debtor is currently receiving, all of which HHS applies to the Debtor's pre-petition debt. The Debtor argues that this conduct violates her chapter 7 discharge and the statutory injunction that came into effect when the discharge was entered. In the Motion and other papers that she filed, the Debtor also alleges that she has been treated poorly by HHS both before and after her bankruptcy case.

HHS makes three arguments in response. First, HHS argues that it was not notified of the Debtor's bankruptcy case and therefore did not have the opportunity to file an adversary proceeding to determine the nondischargeability of its claim. Second, HHS argues that the debt owed by the Debtor is nondischargeable under § 523(a)(7) of the Bankruptcy Code because it is a debt for fraud established through a felony criminal conviction of the Debtor in the Wayne County Circuit Court. Third, HHS argues that the doctrine of collateral estoppel precludes the Debtor from now challenging the nondischargeability of her debt to HHS because the Debtor has already done so before the Michigan Office of Administrative Hearings and Rules ("Administrative Law Office"), which issued a decision (Ex. 6 to the Objection) on October 23, 2017, finding that the HHS claim was not covered by the Debtor's chapter 7 discharge. The Debtor appealed that order to the Wayne County Circuit Court which affirmed the decision on March 8, 2018 (Ex. 7 to the Objection).

Following the hearing, the Court took the Motion under advisement.

<u>Applicable law regarding discharge injunction violations</u>

Section 524(a)(2) of the Bankruptcy Code states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

- 3 -

15-58635-pjs    Doc 59    Filed 10/26/20    Entered 10/26/20 12:09:15    Page 3 of 11

In Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421 (6th Cir. 2000), the Sixth Circuit Court of Appeals explained that "the traditional remedy for violation of an injunction lies in contempt proceedings[.]"

Recently, the United States Supreme Court clarified "the legal standard for holding a creditor in civil contempt when the creditor attempts to collect a debt in violation of a bankruptcy discharge order" in Taggart v. Lorenzen, ___ U.S. ___, 139 S. Ct. 1795, 1801 (2019). "[C]ivil contempt is a severe remedy, and [ ] principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." Id. at 1802 (quotation marks and citations omitted). The Supreme Court rejected the "strict liability" standard, where an act taken with knowledge of the discharge was sufficient for civil contempt. Instead, "[t]his standard is generally an *objective* one." Id. "[A] party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." Id. Accordingly, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." Id. at 1799.

Discussion

The first issue before the Court is whether HHS received notice of the Debtor's bankruptcy case. The Debtor's matrix listed "Michigan Department of Treasury Office of Collections, P.O. Box 30199, Lansing, MI 48909-7699." The Debtor's schedule E/F lists a debt of $13,113.00 owing to Treasury for "overpayment cash + food assistance." HHS does not dispute that Treasury was acting on behalf of HHS in taking collection actions against the Debtor but argues that it was "not sufficient" for the Debtor to put Treasury on the Debtor's matrix because Treasury is a "statewide debt collection agency." HHS cites no supporting legal authority. Because it is undisputed that Treasury was acting as the collection agency for HHS with respect to its claim against the Debtor, the Court finds that it was sufficient for the Debtor to list Treasury on its matrix of creditors required by Federal Rule of Bankruptcy Procedure 1007(a)(1). The Court rejects HHS's argument that it did not have notice of the Debtor's bankruptcy case.

The next issue relates to whether the debt owed to HHS was discharged by the Debtor's chapter 7 discharge or whether it is excepted from discharge under § 523(a)(7). Under § 523(a)(7), a debt is nondischargeable "to the extent such debt is [(i)] for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [(ii)] is not compensation for actual pecuniary loss[.]"

Ordinarily, a request for a bankruptcy court to determine whether a debt is nondischargeable requires an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(6). The Motion is not an adversary proceeding. However, to determine whether HHS's conduct violated the discharge injunction, the Court must necessarily inquire whether the Debtor's debt to HHS was discharged or excepted from discharge under § 523(a)(7). In addition, to decide if HHS should be held in civil contempt under the Taggart standard — whether there was "no fair ground of doubt" as to whether HHS was barred by the Debtor's discharge — the Court must also examine *why* HHS believed that this debt was not subject to the discharge injunction.

The Supreme Court discussed § 523(a)(7) in Kelly v. Robinson, 479 U.S. 36 (1986). In that case, the debtor pleaded guilty to criminal larceny for overpaid welfare benefits. As a condition of her suspended sentence, the court ordered her to pay restitution to the state probation office. The debtor brought a post-discharge adversary complaint, which the state defended by arguing the debt was excepted from discharge. Id. at 39-40.

In discussing the § 523(a)(7) exception to dischargeability, the Supreme Court in Kelly noted its "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." Id. at 47. The Supreme Court then looked at whether the "differences between restitution and a traditional fine"

compelled another result, and concluded they did not, even though "restitution is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused." Id. at 51-52. Key to its holding was the fact that the criminal justice system is not operated primarily for the benefit of victims, but rather for society as a whole. That system encompasses both punishment and rehabilitation of the offender. Restitution does resemble a judgment for the benefit of the victim. However, "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate for the benefit of the State." Id. at 53. The state's interests in punishment and rehabilitation "are sufficient to place restitution orders within the meaning of § 523(a)(7)." Id.

Recently, the Sixth Circuit Court of Appeals applied Kelly in Andrews v. Michigan Unemployment Insurance Agency, 891 F.3d 245 (6th Cir. 2018). The Michigan Unemployment Insurance Agency filed adversary proceedings in several chapter 13 cases consolidated on appeal, based on both § 523(a)(2) and (7). The debtors argued that § 523(a)(7) only applied to the penalty for the overpaid benefits, as it was the more specific statute. The Sixth Circuit Court of Appeals held that the penalties were excepted from the discharge under both statutes, and that grounds for dischargeability "are not necessarily mutually exclusive." Id. at 250

- 7 -

15-58635-pjs    Doc 59    Filed 10/26/20    Entered 10/26/20 12:09:15    Page 7 of 11

compelled another result, and concluded they did not, even though "restitution is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused." Id. at 51-52. Key to its holding was the fact that the criminal justice system is not operated primarily for the benefit of victims, but rather for society as a whole. That system encompasses both punishment and rehabilitation of the offender. Restitution does resemble a judgment for the benefit of the victim. However, "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate for the benefit of the State." Id. at 53. The state's interests in punishment and rehabilitation "are sufficient to place restitution orders within the meaning of § 523(a)(7)." Id.

Recently, the Sixth Circuit Court of Appeals applied Kelly in Andrews v. Michigan Unemployment Insurance Agency, 891 F.3d 245 (6th Cir. 2018). The Michigan Unemployment Insurance Agency filed adversary proceedings in several chapter 13 cases consolidated on appeal, based on both § 523(a)(2) and (7). The debtors argued that § 523(a)(7) only applied to the penalty for the overpaid benefits, as it was the more specific statute. The Sixth Circuit Court of Appeals held that the penalties were excepted from the discharge under both statutes, and that grounds for dischargeability "are not necessarily mutually exclusive." Id. at 250

(citing Husky Int'l Elecs., Inc. v. Ritz, ___ U.S. ___, 136 S. Ct. 1581 (2016)). Even though other courts have disagreed with or distinguished Kelly, the Andrews court did not take issue with Kelly's holding that a debt for criminal restitution was excepted from discharge under § 523(a)(7). Instead, it found Kelly to be "illustrative" in observing that, in addition to § 523(a)(7), the restitution could have also been non-dischargeable under § 523(a)(2) or (4). Id. Accordingly, the Andrews court concluded that the unemployment insurance overpayment debt was covered by both § 523(a)(2) and (7). Id.

In this case, the debt owed to HHS was established by an Order of Probation entered by the Wayne County Circuit Court on January 15, 2009 in case number 08902406 (Ex. 1 to the Objection). The order states that the Debtor is convicted of a felony for welfare fraud and requires as a condition of probation that the Debtor pay restitution of $19,578.00 to HHS. That order was entered after the Debtor signed an Intentional Program Violation Repayment Agreement on December 10, 2008 in which she acknowledged receiving overpayments and agreed to pay back the balance of $19,578.00 (Ex. 2 to the Objection).

The Debtor argues that she was not well represented in the criminal case in Wayne County Circuit Court, did not understand what she was signing, and only signed the documents given to her because "that was the best thing for me to do to

get home to my infant child at the time." The Debtor also alleges that she was treated very poorly by representatives of HHS throughout this entire process.

The Debtor seems sincere and the Court sympathizes with her because her papers show that she continues to struggle financially. However, the Debtor does not dispute that the Wayne County Circuit Court entered the Order of Probation nor does she dispute that she signed the Intentional Program Violation Repayment Agreement. Regardless of how the Debtor may have been treated by HHS in the criminal case, the Court does not have the authority to disregard the Order of Probation and its express requirement that the Debtor pay $19,578.00 of restitution for welfare fraud.

After reviewing all the exhibits to the Motion, Objection and other papers filed by the Debtor and HHS, together with the Supreme Court and Sixth Circuit Court of Appeals opinions construing § 523(a)(7), the Court finds that the Debtor's debt to HHS was not discharged because it is the type of debt within the § 523(a)(7) exception to discharge. Therefore, HHS did not violate the discharge injunction. From this finding, it follows that the Taggart standard for civil contempt is not met because HHS had an objectively reasonable basis to conclude that its debt was excepted from discharge under § 523(a)(7) and that its conduct in continuing to collect on the Debtor's pre-petition debt was therefore lawful. For these reasons, the Court must deny the Motion.

The third issue before the Court pertains to HHS's argument that the decision of the Administrative Law Office and the affirmance of that decision by the Wayne County Circuit Court collaterally estop the Debtor from now contesting the nondischargeability of her debt to HHS. The Court need not adjudicate this issue because the Court has already concluded for the reasons explained that the Debtor's debt to HHS was not discharged. However, the Court does note that even without regard to any possible collateral estoppel effect, the Administrative Law Office decision and the Wayne County Circuit Court affirmance do have probative value for purposes of the Motion. The reason is that these decisions informed HHS's belief that it was free to continue collection efforts. That these decisions expressly state that the HHS debt was not discharged only reinforces the Court's finding that HHS's belief that its conduct was not in violation of the discharge order was an objectively reasonable belief.

Conclusion

Because the Debtor's debt to HHS was not discharged, there was no violation of the discharge injunction and the Debtor has not met the Taggart standard of showing that there was "no fair ground of doubt" as to whether the discharge barred HHS's conduct. For these reasons, the Court must deny the Motion. To the extent that the Debtor has also raised allegations regarding how poorly HHS has treated her, the Court's denial of the Motion is not intended to minimize any of these

allegations and should not be construed as condoning the alleged conduct. However, it is important to keep in mind that the only matter before the Court is the Motion. Accordingly,

**IT IS HEREBY ORDERED** that the Motion (ECF No. 45) is denied.

**Signed on October 26, 2020**



/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**